UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE PETROBRAS SECURITIES LITIGATION

This Document Applies to:

*Dimensional Emerging Markets Value Fund, et al. v. Petróleo Brasileiro S.A – Petrobras*, No. 15-cv-2165 (JSR)

*SKAGEN, et al. v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-2214 (JSR)

*New York City Employees' Retirement System, et al. v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-2192 (JSR)

*Transamerica Income Shares, Inc., et al. v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-3733 (JSR)

*Aberdeen Emerging Markets Fund, et al. v. Petróleo Brasileiro S.A. – Petrobras*, No. 15-cv-3860 (JSR)

*Ohio Public Employees Retirement System v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-3887 (JSR)

*Central States Southeast and Southwest Areas Pension Fund v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-3911 (JSR)

*Washington State Investment Board v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-3923 (JSR)

*Aberdeen Latin American Income Fund Limited, et al. v. Petróleo Brasileiro S.A. – Petrobras*, No. 15-cv-4043 (JSR)

*NN Investment Partners B.V., et al. v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-4226 (JSR)

*Aura Capital Ltd. v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-4951 (JSR)

No 14-cv-9662 (JSR)

**INDIVIDUAL PLAINTIFFS' JOINT MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
THE INDIVIDUAL ACTION COMPLAINTS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................ 1

PROCEDURAL BACKGROUND ............................................................ 3

ARGUMENT ........................................................................................ 4

    I.     THE INDIVIDUAL PLAINTIFFS HAVE  STANDING ..................................... 4

          A.     The Aura Capital Plaintiff Received a Valid Assignment of Claims ....................................................................................... 5

          B.     The Dimensional and NN Investment Plaintiffs Have Standing Under the Prudential Exception Recognized in Huff .......................................................................................... 8

    II.    THE MOTION TO DISMISS OPINION DOES NOT REQUIRE DISMISSAL OF CLAIMS IN THE INDIVIDUAL ACTIONS ......................... 10

          A.     The Individual Plaintiffs Have Alleged Domestic Transactions in the Petrobras Notes .......................................... 10

          B.     The Individual Plaintiffs Have Standing Under Section 12(a)(2) .................................................................................... 13

          C.     Plaintiffs Need Not Plead Reliance In Connection With Their Section 11 Claims ................................................................ 13

    III.   PLAINTIFFS ADEQUATELY PLEAD RELIANCE FOR THEIR SECTION 18 CLAIMS ................................................................ 14

    IV.   MOST OF THE INDIVIDUAL PLAINTIFFS' NON-FEDERAL CLAIMS ARE NOT PRECLUDED BY SLUSA ............................... 21

    V.    THE INDIVIDUAL PLAINTIFFS ADEQUATELY ALLEGE THEIR SECTION 12(a)(2) CLAIMS ................................................. 23

          A.     The Underwriter Defendants Were Statutory Sellers ............................... 23

          B.     The Petrobras Defendants Were Statutory Sellers .................................... 25

    VI.   WSIB ADEQUATELY ALLEGES A NEGLIGENT MISREPRESENTATION CLAIM ...................................................... 26

VII.    THE INDIVIDUAL PLAINTIFFS HAVE ADEQUATELY
ALLEGED THAT HELMS WAS A CONTROL PERSON
UNDER SECTION 15 .......................................................................................... 29

CONCLUSION ................................................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Absolute Activist Value Master Fund Ltd. v. Ficeto,
    677 F.3d 60 (2d Cir. 2012)...................................................................................10

AHW Inv. P'ship v. CitiGroup Inc.,
    980 F. Supp. 2d 510 (S.D.N.Y. 2013).....................................................................28

City of Taylor Police & Fire Ret. Sys. v. W. Union Co.,
    No. 13-CV-03325-MSK-MJW, 2014 WL 4799659 (D. Colo. Sept. 26, 2014)...................8, 10

City of Westland Police and Fire Ret. Sys. v. MetLife, Inc.,
    928 F. Supp. 2d 705 (S.D.N.Y. 2013).....................................................................29

Colonial Imps. v. Carlton N.W., Inc.,
    121 Wash. 2d 726 (Wash. 1993)............................................................................28

Cortlandt St. Recovery Corp. v. Deutsche Bank AG,
    No. 12 Civ. 9351 (JPO), 2013 WL 3762882 (S.D.N.Y. July 18, 2013) ...................................6

Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.,
    790 F.3d 411 (2d Cir. 2015)...........................................................................5, 6, 7

Gould v. Winstar,
    692 F.3d 148 (2d. Cir. 2012)................................................................................17

Griffin v. PaineWebber, Inc.,
    No. 99 CIV. 2292 (VM), 2001 WL 740764 (S.D.N.Y. June 29, 2001)..................................26

In re Able Labs. Sec. Litig.,
    No. CIV.A. 05-2681 (JAG), 2008 WL 1967509 (D.N.J. Mar. 24, 2008)...............................15

In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.,
    995 F. Supp. 2d 291 (S.D.N.Y. 2014)...............................................................19, 20

In re Bear Stearns Mortg. Pass-Through Cert. Litig.,
    851 F. Supp. 2d 746 (S.D.N.Y. 2012)...............................................................29, 30

In re BioScrip, Inc. Sec. Litig.,
    No. 13-CV-6922 AJN, 2015 WL 1501620 (S.D.N.Y. Mar. 31, 2015).......................11, 25, 29

In re BP p.l.c. Sec. Litig.,
    MDL No. 10-md-2185 slip op. (S.D. Tex. Sept. 30, 2014)...................................................22

In re BP p.l.c. Sec. Litig.,
  Nos. MDL No. 10-md-2185, 4:12-CV-1256, 2013 WL 6383968 (S.D. Tex. Dec. 5,
  2013) ...........................................................................................................................20

In re Initial Pub. Offering Sec. Litig.,
  241 F. Supp. 2d 281 (S.D.N.Y. 2003) ....................................................................14

In re Marsh & McLennan Cos. Sec. Litig.,
  501 F. Supp. 2d 452 (S.D.N.Y. 2006) ...............................................................15, 21

In re Merck & Co. Sec., Derivative & ERISA Litig.,
  2015 WL 382912 (D.N.J. June 19, 2015) ..................................................................5

In re Merrill Lynch & Co. Research Reports Sec. Litig.,
  272 F. Supp. 2d 243 (S.D.N.Y. 2003) ....................................................................24

In re Morgan Stanley Info. Fund Sec. Litig.,
  592 F.3d 347 (2d Cir. 2010) ..................................................................................23

In re Petrobras Sec. Litig,
  No. 14-cv-9662, 2015 WL 4557364 (S.D.N.Y. July 30, 2015) ........................14, 20

In re Refco Inc. Sec. Litig.,
  892 F. Supp. 2d 534 (S.D.N.Y. 2012) ...............................................................26, 27

In re Vivendi Universal, S.A. Sec. Litig.,
  605 F. Supp. 2d 570 (S.D.N.Y. 2009) ......................................................................8

In re Winstar Commc'ns Sec. Litig.,
  290 F.R.D. 437 (S.D.N.Y. 2013) .............................................................................8

In re WorldCom, Inc. Sec. Litig.,
  294 F. Supp. 2d 392 (S.D.N.Y. 2003) ...............................................................29, 30

Int'l Fund Mgmt. S.A. v. Citigroup Inc.,
  822 F. Supp. 2d 368 (S.D.N.Y. 2011) ....................................................................19

Intellivision v. Microsoft Corp.,
  No. 07 CIV. 4079 (JGK), 2008 WL 38843826 (S.D.N.Y. Aug. 20, 2008) ............27

La Luna Enters. v. CBS Corp.,
  74 F. Supp. 2d 384 (S.D.N.Y. 1999) ......................................................................27

LaSala v. Bordeir et Cie,
  519 F.3d 121 (3d Cir. 2008) .............................................................................22, 23

Maverick Fund, L.D.C. v. Comverse Tech., Inc.,
  801 F. Supp. 2d 41 (E.D.N.Y. 2011) ................................................................15, 20

Morrison v. Nat'l Austrl. Bank Ltd.,
    561 U.S. 247 (2010).................................................................................10

Northstar Fin. Advisors, Inc. v. Schwab Invs.,
    No. 11-17187, 2015 U.S. App. LEXIS 7027 (9th Cir. Apr. 28, 2015)......................8

Northumberland Cnty. Ret. Sys. v. Kenworthy,
    No. CIV-11-520-D, 2013 WL 5230000 (W.D. Okla. Sept. 16, 2013) ..................24

Oates v. Taylor,
    31 Wn.2d 898 (Wash. 1948).......................................................................28

OFI Risk Arbitrages v. Cooper Tire & Rubber Co.,
    63 F. Supp. 3d 394, 404 (D. Del. 2014)..........................................................8

Perry v. Duoyuan Printing, Inc.,
    No. 10 Civ. 7235 (GBD), 2013 WL 4505199 (S.D.N.Y. Aug. 22, 2013) ..............24

Plumbers' & Pipefitters' Local No. 562 v. J.P. Morgan Acceptance Corp. I,
    No. 08-cv-1713-ERK, 2012 WL 601448 (E.D.N.Y. Feb. 23, 2012)......................29

Emps.' Ret. Sys. of the Gov't of the Virgin Islands v. J.P. Morgan Chase & Co.,
    804 F. Supp. 2d 141 (S.D.N.Y. May 10, 2011) ...................................29, 30

Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.,
    714 F. Supp. 2d 475 (S.D.N.Y. 2010)..........................................................30, 31

Sack v. Low,
    478 F.2d 360 (2d Cir. 1973).......................................................................27

Shain v. Duff & Phelps Credit Rating Co.,
    915 F. Supp. 575 (S.D.N.Y 1996).................................................................25

Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.,
    33 F. Supp. 3d 401 (S.D.N.Y. 2014).............................................................19

Sprint Commc'ns Co. v. APCC Servs., Inc.,
554 U.S. 269 (2008)....................................................................................5

Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP,
    612 F. Supp. 2d 267 (S.D.N.Y. 2009)..........................................................27

UBS AG Sec. Litig.,
    No. 07 Civ. 11225 (RJS), 2012 WL 4471265 (S.D.N.Y. 2012)...........................25

United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen
    Fin. Corp.,
    No. 14-81064-CIV-WPD, 2014 WL 7236985 (S.D. Fla. Nov. 7, 2014).................8

W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP,
  549 F.3d 100 (2d Cir. 2008) ........................................................................................ passim

**STATUTES**

15 U.S.C. § 77p(d)(2) ................................................................................................... 22

**RULES**

Fed. R. Civ. P. 8 ............................................................................................................ 14

Fed. R. Civ. P. 9(b) ...................................................................................................... 20

<u>**TABLE OF DEFINED TERMS**</u>

The Individual Plaintiffs adopt and incorporate by reference the defined terms set out in Defendants' Joint Memorandum of Law in Support of Their Motion to Dismiss the Individual Action Complaints (ECF No. 199) at viii-x.  The Individual Plaintiffs add to this list the following terms which are used herein.

| | |
|---|---|
| <u>Aberdeen Emerging</u> Compl. | Complaint filed by Aberdeen Emerging Markets Fund et al. (1:15-cv-3860-JSR, ECF No. 1) |
| <u>Aberdeen Lat. Am.</u> Compl. | Complaint filed by Aberdeen Latin American Income Fund Limited et al. (1:15-cv-4043-JSR, ECF No. 1) |
| <u>Aura Capital</u> Compl. | Complaint filed by Aura Capital, Ltd. (1:15-cv-4951-JSR, ECF No. 1) |
| <u>Central States</u> Compl. | Complaint filed by Central States, Southeast and Southwest Areas Pension Fund (1:15-cv-3911-JSR, ECF No. 1) |
| Complaints or Individual Complaints | Complaints in the Individual Actions |
| Class MTD Opp. | Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Consolidated Amended Complaint (1:14-cv-9662-JSR, ECF No. 160) |
| Danske | Plaintiff Danske Invest Management A/S |
| Def. Br. | Defendants' Joint Memorandum of Law in Support of Their Motion to Dismiss the Individual Action Complaints (ECF No. 199) |
| <u>Dimensional</u> Amended Compl. | First Amended Complaint filed by Dimensional Emerging Markets Value Fund, et al., No. 15-cv-2165-JSR, ECF No. 19) |
| Ex. | Exhibit to the Mustokoff Decl. |
| Helms | Theodore Helms |

| | |
|---|---|
| Individual Plaintiffs or Plaintiffs | Plaintiffs in the Individual Actions |
| Mustokoff Decl. | Declaration of Matthew L. Mustokoff in Support of the Individual Plaintiffs' Joint Opposition to Defendants' Motion to Dismiss the Individual Action Complaints |
| NN Investment Compl. | Complaint filed by NN Investment Partners B.V. et al. (1:15-cv-4226-JSR, ECF No. 1) |
| NY Funds Compl. | Complaint filed by New York City Employees Retirement System et al. (1:15-cv-2192-JSR, ECF No. 1) |
| Offerings | Offerings of Petrobras Notes which occurred on May 15, 2013 and March 11, 2014 |
| OPERS Compl. | Complaint filed by Ohio Public Employees Retirement System (1:15-cv-3887-JSR, ECF No. 1) |
| Skagen Compl. | Complaint filed by Skagen AS et al. (1:15-cv-2214-JSR, ECF No. 1) |
| Transamerica Compl. | Complaint filed by Transamerica Income Shares, Inc. et al. (1:15-cv-3733-JSR, ECF No. 1) |
| WSIB Compl. | Complaint filed by Washington State Investment Board (1:15-cv-3923-JSR, ECF No. 1) |

## PRELIMINARY STATEMENT

The Individual Actions assert claims under the Securities Act and the Exchange Act against Petrobras and the other Defendants arising out of a massive, decade-long scheme to funnel billions of dollars in bribes and kickbacks to Petrobras executives and Brazilian government officials. For the reasons discussed herein, Defendants' Motion to Dismiss the Individual Action Complaints should be denied.

<u>Standing</u>. Defendants frame their standing challenge against certain of the Individual Plaintiffs on the false premise that these Plaintiffs are "investment advisors" suing on behalf of independent investor clients. Def. Br. at 6. In fact, <u>none</u> of the challenged Individual Plaintiffs purports to sue in its capacity as an investment advisor. Instead, each of the challenged Plaintiffs either received a valid assignment of the underlying investors' claims (as in the case of Plaintiff Aura Capital, Ltd.) or, consistent with the "prudential exception" recognized in <u>W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP</u>, 549 F.3d 100 (2d Cir. 2008), is suing in its capacity as the legal entity with authority to sue on behalf of Petrobras investors who cannot bring claims except through the challenged plaintiff. The <u>Dimensional</u> Plaintiffs amended their complaint as of right on September 11, 2015 to make clear that they have standing under the prudential exception. The <u>NN Investment</u> Plaintiffs also fit within the <u>Huff</u> exception and will seek leave to replead with supplemental allegations describing their structure and relationships to the injured parties in short order.

<u>MTD Opinion</u>. The allegations in the Individual Actions are distinct from those of the Class Action, such that the Individual Plaintiffs adequately plead: (i) that they purchased Petrobras Notes in domestic transactions; (ii) that their purchases of Petrobras Notes were made

in the initial offering; and (iii) reliance on Petrobras's registration statement in connection with their purchases of the 2013 Notes.[1]

Section 18 Reliance. The Individual Plaintiffs adequately allege actual reliance under Section 18 by specifically pleading which misrepresentations within the Forms 20-F they, or their investment managers, read and relied upon in purchasing Petrobras securities. The Skagen, Aberdeen Emerging and Aberdeen Lat. Am. Plaintiffs attached schedules to their Complaints listing the specific purchases made in reliance on Defendants' misstatements, and the remaining Individual Plaintiffs stand ready to provide this information to the Court in an amended pleading, should the Court so require. The dismissed, bare-bones Section 18 claims in the cases cited by Defendants contrast starkly with the Individual Plaintiffs' particularized claims here.

SLUSA Preclusion. The Central States and NN Investment Plaintiffs' non-federal claims are not precluded by SLUSA because, as the Court of Appeals for the Third Circuit has explicitly recognized, "State" as used in SLUSA does not implicate foreign law claims. Therefore, the Individual Plaintiffs' claims under Brazilian law are not preempted. The WSIB Plaintiffs' claims likewise are not precluded by SLUSA because WSIB is a State pension plan and thus falls outside the ambit of the statute.

---

[1]    The Individual Plaintiffs are not asserting any claims outside the applicable statutes of repose. To the extent that any claims asserted by the Individual Plaintiffs are barred by the repose period (see Def. Br. at 13-14), the Individual Plaintiffs acknowledge that such claims are untimely. Further, to the extent the Defendants are reasserting arguments made in the Class MTD Br. (see Def. Br. at n.2), the Individual Plaintiffs incorporate herein the responsive arguments asserted by the Class Action plaintiffs (see generally Class MTD Opp.), rely on the portions of the MTD Opinion rejecting Defendants' dismissal arguments, and rest on the distinct and particularized allegations in each of the Individual Complaints. Additionally, in light of the MTD Opinion compelling the arbitration of Brazilian law claims, the Central States, OPERS, NN Investment and WSIB Plaintiffs are no longer seeking to assert such claims and acknowledge that amendment of their pleadings to address Defendants' argument here would likely be futile.

Section 12(a)(2) Statutory Sellers.  The Individual Plaintiffs adequately allege that they purchased Petrobras Notes in the Offerings and, therefore, that the Underwriter Defendants passed title to these Plaintiffs.  The Individual Plaintiffs also adequately allege that the Petrobras Defendants, as the issuers of the relevant Notes, were statutory sellers within the meaning of Section 12(a)(2) of the Securities Act—allegations the Court already found to be adequate in the Class Action.

Negligent Misrepresentation Claims.  Under New York choice of law rules (which are applicable here), Washington State law should apply to WSIB's claims for negligent misrepresentation.  Because Defendants effectively concede that WSIB has stated a claim for common law negligent misrepresentation pursuant to Washington State law, WSIB's negligent misrepresentation claims should be sustained.

Control Person Claims.  The NY Funds, Transamerica, OPERS and WSIB Plaintiffs adequately allege that Helms was a control person under Section 15 of the Securities Act by pleading that he was a corporate officer who signed Petrobras's registration statements.

The Individual Plaintiffs also emphasize that not all of Defendants' arguments are applicable to each Individual Action.  See App'x A to Def. Br.

**PROCEDURAL BACKGROUND**

The Individual Actions were consolidated for pre-trial purposes pursuant to the Court's March 24, 2015 Scheduling and Consolidation Order (1:14-cv-9662, ECF No. 105).  The defendants in the Class Action moved to dismiss the Class Action on April 17, 2015.  See Class MTD Br.  On July 9, 2015, the Court issued the Bottom-Line Order, largely sustaining the claims asserted against Defendants in the Class Action.  See Bottom-Line Order.  Among other rulings, the Court:

- denied Defendants' motion to dismiss the Section 10(b) and Section 20(a) claims (id. at 2);

- granted Defendants' motion to dismiss the Section 12(a)(2) claims for failure to plead purchases in an initial offering but granted leave to replead (id. at 1); and

- granted Defendants' motion to dismiss the Securities Act claims for failure to allege purchases in domestic transactions but granted leave to replead (id. at 2).

The Court's July 30, 2015 MTD Opinion sets forth the rationale underlying these holdings.

Pursuant to the Court's Order, Defendants filed a Joint Motion to Dismiss the Individual Actions on August 21, 2015. See 1:14-cv-9962-JSR, ECF Nos. 197-200.

## ARGUMENT

### I.     THE INDIVIDUAL PLAINTIFFS HAVE  STANDING

Relying on the Second Circuit's decision in W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100 (2d Cir. 2008), Defendants posit that certain Individual Plaintiffs lack Article III standing because they purportedly "have not demonstrated they have suffered an injury-in-fact . . . ." Def. Br. at 5-9.  Not only do Defendants misread Huff and misapply its reasoning to the Individual Plaintiffs, they frame their standing challenge on the false premise that the Individual Plaintiffs are "investment advisors" suing on behalf of their investor clients. Id. at 6.  Contrary to Defendants' unsupported supposition—and unlike the plaintiff in Huff— none of the challenged Individual Plaintiffs purports to sue in its capacity as an investment advisor.  Instead, each of the challenged Plaintiffs either received a valid assignment of the underlying investors' claims or, consistent with the "prudential exception" recognized in Huff, is

suing in its capacity as the entity with authority to sue on behalf of one or more investors in

Petrobras securities who cannot bring claims except through the challenged plaintiff.[2]

A.    The <u>Aura Capital</u> Plaintiff Received a Valid Assignment of Claims

Defendants do not contest—nor could they—that a valid assignment of a legal claim

confers Article III standing.  In considering whether an assignee of a legal claim for money had

standing to pursue the claim, the Supreme Court in <u>Sprint Commc'ns Co. v. APCC Servs., Inc.</u>,

held that while the assignee did not suffer the original injury, the injured assignor had transferred

its claim to the plaintiff.  554 U.S. 269, 271, 286 (2008).  In so holding, the Supreme Court

concluded that for a plaintiff to have sustained an injury in fact, a plaintiff need only have legal

title to the claim.  <u>Id.</u> at 285-286.  The Second Circuit in <u>Huff</u> likewise explained "that injury in

fact could be satisfied through an assignment of claims, as an assignment transfers the assignor's

legal ownership of the claims to the plaintiff assignee."  <u>In re Merck & Co. Sec., Derivative &</u>

<u>ERISA Litig.</u>, 2015 WL 382912, at *2 (D.N.J. June 19, 2015) (citing <u>Huff</u>, 549 F.3d at 103).

Because <u>Sprint</u> and <u>Huff</u> make clear that an assignment will confer standing to the assignee,

Aura Capital established its Article III standing by entering into a timely assignment, the

existence of which is properly pleaded in the Complaint.  <u>See</u> <u>Aura Capital</u> Compl. ¶ 36.

Defendants rely on a mischaracterization of <u>Cortlandt St. Recovery Corp. v. Hellas</u>

<u>Telecomms., S.a.r.l.</u>, 790 F.3d 411, 418 (2d Cir. 2015), to suggest that Aura Capital must submit

evidence of the assignment at the time of pleading to prove Article III standing or face dismissal.

Def. Br. at 6.  To the contrary, the district court in <u>Cortlandt</u> analyzed the assignment at issue,

_____

[2]    In <u>Huff</u>, the Second Circuit explained that the "injury-in-fact" requirement for standing is
met where a plaintiff:  (i) "personally suffer[s] an injury"; (ii) has received a valid assignment of
the injured party's claim(s); <u>**or**</u> (iii) falls within the "well-recognized prudential exception" to
Article III "where the plaintiff can demonstrate (1) a close relationship to the injured party and
(2) a barrier to the injured party's ability to assert its own interests."  549 F.3d at 107-109.

which was submitted after the filing of the complaint.  The district court held that the assignment

did not confer Article III standing because "[f]irst, the notes at issue in the PIK Notes

Assignment are **not** the notes at issue in this case," and "[s]econd, even if the notes at issue in the

PIK Notes Assignment were the same as those at issue here—which they are not—that document

does not appear to convey title to the claims to Cortlandt.  Nowhere in the PIK Notes

Assignment does it state, or clearly suggest, that <u>ownership of</u> or <u>title to</u> the claims has been

assigned."  <u>Cortlandt St. Recovery Corp. v. Deutsche Bank AG</u>, No. 12 Civ. 9351 (JPO), 2013

WL 3762882, *3 (S.D.N.Y. July 18, 2013).[3]  The Second Circuit affirmed the lower court's

ruling, noting that there was no "other evidence in the record, suggesting that title to claims

arising under the Sub Notes was assigned to [plaintiff]."  <u>Cortlandt</u>, 790 F.3d at 418-19.

Here, unlike the notes assignment in <u>Cortlandt</u>, Aura Capital's assignments unequivocally

convey title of the claims to the assignee.  Specifically, each of the two assignments states:

> [T]he undersigned Assignor ("Assignor"), hereby assigns, transfers and sets over
> to Aura Capital Limited, all rights, title and interest of the Assignor in any and all
> claims, demands and causes of action whatsoever which the Assignor has or may
> have arising from violations under the federal securities laws of the United States
> of America in connection with the purchase of the publically traded securities of
> Petróleo Brasileiro S.A.—Petrobras (PBR—NYSE).

<u>See</u> Aura Capital Assignments, attached hereto as Exs. A and B.  Thus, in contrast to the

assignment in <u>Cortlandt</u> which only conveyed rights to collect proceeds of the claim and power

of attorney, the assignment here, in accord with the Second Circuit's holding in <u>Cortlandt</u>,

contains the requisite language for a valid legal assignment in that it conveys title to the claim.

<u>See</u> <u>Cortlandt</u>, 790 F.3d at 418.[4]

---

[3]     Unless otherwise noted, all emphasis is supplied and all internal quotations or citations
are omitted.

[4]     The other cases Defendants cite are also off the mark.  In <u>Phoenix Light SF Ltd. v. U.S.
Bank Nat'l Ass'n</u>, not only did the court explicitly note that it "may consider documents outside

In short, none of the cases cited by Defendants is analogous to the case here, where Aura Capital was assigned "all rights, title and interest of the Assignor in any and all claims, demands and causes of action" arising from the purchase of Petrobras stock.  Under <u>Cortlandt</u>, this language is sufficient to create a valid assignment.[5]  <u>See</u> <u>Cortlandt</u>, 790 F.3d at 418 ("A would-be assignor need not use any particular language to validly assign its claim so long as the language manifests [the assignor's] intention to transfer **<u>at least title or ownership</u>**, <u>i.e.,</u> to accomplish 'a completed transfer of the entire interest of the assignor in the particular subject of assignment.'" (quoting <u>Advanced Magnetics, Inc., v. Bayfront Partners, Inc.</u>, 106 F.3d 11, 17 (2d Cir. 1997))).  Notwithstanding the valid assignment, Defendants' standing argument against Aura Capital is particularly inapt here because Aura Capital is not an investment advisor asserting a claim on behalf of a client or clients, but rather a company 100% owned by the two related assignors of the claim.  *See* Exs. A and B.

---

the pleadings" but the plaintiffs' submissions themselves demonstrated that the "plaintiffs recognize that they are contractually barred from filing claims" on behalf of the assignors.  No. 14-cv-10116 (KBF), 2015 WL 2359358, at *4  n.4, (S.D.N.Y. May 18, 2015).  Similarly, in <u>Amusement Indus., Inc. v. Buchanan Ingersoll & Rooney, P.C.</u>, the plaintiffs failed to allege that causes of action had been assigned and only generally alleged an assignment of notes.  No. 11 Civ. 4416 (LAK)(GWG), 2012 WL 1193353, at *6 (S.D.N.Y. Apr. 10, 2012) ("[B]ecause none of the causes of action alleged here arise out of the note itself, all of [plaintiff's] claims should be dismissed.").  Finally, in <u>Franco v. Conn. Gen. Life Ins. Co.</u>, the plaintiffs' assignment of health benefits in an ERISA action had numerous deficiencies not present here, including:  (i) the plan subscribers (assignors) were also pursuing claims in the action, and (ii) the court found that "a common-sense reading of the [complaints] indicates that the assignments consisted of nothing more than the patient-insured's transfer of his or her right to reimbursement by the insurer . . . ." 818 F. Supp. 2d 792, 811 (D.N.J. 2011).

[5]     Even if the Court determines that the language of the assignment does not validly assign the claim to Aura Capital—which it does—or that the Complaint does not adequately allege the existence of the assignment—which it also does—the Court should permit Plaintiff Aura Capital to submit a supplemental pleading to remedy that deficiency.  <u>See</u> <u>Northstar Fin. Advisors, Inc. v. Schwab Invs.</u>, No. 11-17187, 2015 U.S. App. LEXIS 7027, *29 (9th Cir. Apr. 28, 2015) (affirming district court's decision allowing plaintiff to file a supplemental pleading to submit a post-complaint assignment to properly demonstrate standing).

**B.      The <u>Dimensional</u> and <u>NN Investment</u> Plaintiffs Have Standing Under the Prudential Exception Recognized in <u>Huff</u>**

Each of the challenged Plaintiffs in the <u>Dimensional</u> and <u>NN Investment</u> actions has standing under the "prudential exception" to Article III standing which, as recognized by the Second Circuit in <u>Huff</u>, applies where the plaintiff has "a close relationship to the injured party" and where there is "a barrier to the injured party's ability to assert its own interests."  549 F.3d at 107-09.

Courts have held that the prudential exception enables "third parties who are not the beneficial owners of a security [to] bring claims on behalf of the beneficial owners" where the beneficial owners cannot bring suit on their own.  <u>In re Winstar Commc'ns Sec. Litig.</u>, 290 F.R.D. 437, 444 (S.D.N.Y. 2013) (citing <u>Huff</u>, 549 F.3d at 109).  The <u>Huff</u> court likened the prudential exception to "courts historically [] permit[ting] '[t]rustees [to] bring suits'" on behalf of their trusts.  549 F.3d at 109-10 (quoting <u>Sprint</u>, 554 U.S. at 287).  Thus, where the manager or trustee of the injured funds is the "only party who can bring suit for the losses sustained in [the] funds, it has standing to do so under <u>Huff</u>."  <u>Winstar</u>, 290 F.R.D. at 444; <u>see also</u> <u>In re Vivendi Universal, S.A. Sec. Litig.</u>, 605 F. Supp. 570, 578-79 (S.D.N.Y. 2009) (prudential exception applies to entities such as investment companies or fund managers where underlying "funds are not legal entities that could bring suit" on their own behalf); <u>City of Taylor Police & Fire Ret. Sys. v. W. Union Co.</u>, No. 13-CV-03325-MSK-MJW, 2014 WL 4799659, at *5 (D. Colo. Sept. 26, 2014) (exception applies to entity which has "trustee-like powers over the funds' property" where funds cannot bring the claims on their own); <u>OFI Risk Arbitrages v. Cooper Tire & Rubber Co.</u>, 63 F. Supp. 3d 394, 404 (D. Del. 2014) (exception applied to asset management company that had "exclusive right" and "legal mandate" to engage in litigation on behalf of the funds, who  "cannot act on their own"); <u>United Union of Roofers, Waterproofers &</u>

Allied Workers Local Union No. 8 v. Ocwen Fin. Corp., No. 14-81064-CIV-WPD, 2014 WL 7236985, at *3 (S.D. Fla. Nov. 7, 2014) (exception applied to institutional investor who was "obligated by law to protect and act on behalf of the underlying Equity fund—a pool of assets not capable of taking any legal action").

Each of the challenged Dimensional and NN Investment Plaintiffs brings suit as a trustee or other responsible entity under law on behalf of one or more injured investors in Petrobras securities who cannot bring suit themselves—**not** as an investment advisor on behalf of unaffiliated clients like the plaintiff in Huff.[6]  Accordingly, each of the challenged Plaintiffs has standing to sue under the prudential exception.[7]

The Dimensional Plaintiffs filed an amended complaint as of right, pursuant to Fed. R. Civ. P. 15(a)(1)(B), adding supplemental allegations to clarify the structure of the Dimensional parties and the relationships between the challenged Plaintiffs and the injured funds which cannot bring claims except through the challenged Plaintiffs.  See Dimensional Amended Compl. ¶¶ 32-37.  For example, as now alleged, Plaintiff DFA Investment Trust Company ("DFAITC"), a registered Delaware statutory trust, issued several series of shares (including The Emerging Markets Series) pursuant to its Amended and Restated Declaration of Trust.  See id. ¶ 33.  Each series is the equivalent of a separate mutual fund and each has no legal personality separate from DFAITC, no employees or officers, and no ability to act except by and through DFAITC.  Id.

---

[6]     In Huff, the Second Circuit considered whether an investment advisor—managing investments for a number of unaffiliated third parties—had standing to assert claims on its clients' behalf.  549 F.3d at 103.  After finding that the advisor's clients were the injured parties and **fully capable of pursuing their own claims**, the Huff court concluded that the advisor's power-of-attorney was insufficient to "confer a legal title to the claims" and thus the advisor did not have standing under Article III.  Id. at 109-10.

[7]     Of course, none of the Plaintiffs in the NN Investment or Dimensional actions is seeking a double recovery.  Instead, the Plaintiffs seek to recover damages—once—for each of the identified beneficial owners of Petrobras securities who was harmed by Defendants' misconduct.

Similarly, Plaintiff DFA Australia Limited ("DFA Australia"), an Australian corporation, is the designated "Manager" (or trustee) of Dimensional Emerging Markets Trust ("DEM"), a unit trust constituted under the laws of New South Wales, Australia. See id. at 34. Pursuant to DEM's Constitution, DFA Australia has "all powers in respect of [DEM] that it is possible under the law to confer on a trustee and is empowered to act as though it were the absolute owner of the [a]ssets of [DEM] and acting in its personal capacity." Id. In other words, DFA Australia has the exclusive authority to act on behalf of DEM in all matters. Id. Each of the remaining challenged Dimensional Plaintiffs assumes a similar role—akin to a trustee—in relation to their respective series, sub-funds or trusts. See id. ¶ 32, 35-37. Thus, each of the six challenged Dimensional Plaintiffs "comfortably fit[] within Huff's prudential exception,'" City of Taylor, 2014 WL 4799659, at *5, and their amended allegations moot Defendants' dismissal challenge.

The NN Investment Plaintiffs will file a motion to amend their complaint with similar supplemental allegations in short order.

## II.  THE MOTION TO DISMISS OPINION DOES NOT REQUIRE DISMISSAL OF CLAIMS IN THE INDIVIDUAL ACTIONS

### A.  The Individual Plaintiffs Have Alleged Domestic Transactions in the Petrobras Notes

The Second Circuit, interpreting the U.S. Supreme Court's decision in Morrison v. Nat'l Austrl. Bank Ltd., 561 U.S. 247 (2010), has held that, where securities do not trade on a domestic exchange, a transaction is domestic "if irrevocable liability is incurred or title passes within the United States." Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 67 (2d Cir. 2012). At the motion to dismiss stage, "it is sufficient for a plaintiff to allege facts leading to the plausible inference that the parties incurred irrevocable liability within the United States." Id. at 68.

Invoking <u>Absolute Activist</u>, Defendants challenge whether five of the Individual

Plaintiffs' Complaints (NY Funds, OPERS, Skagen, Transamerica and WSIB) adequately plead

domestic transactions in Petrobras Notes.  <u>See</u> Def. Br. at 9-10.  However, the challenged

Individual Plaintiffs' allegations are sufficiently pled.

<u>First</u>, facts surrounding the Offerings demonstrate that, even without more, alleging

purchases <u>in</u> the Offerings should be sufficient to plead domestic transactions.  The Offering

Documents for the 2013 and 2014 Offerings both state that the only public offering of the 2013

and 2014 Petrobras Notes would take place in the United States.[8]  Moreover, four of the five

pertinent Individual Plaintiffs are U.S. entities, and all of the pertinent Underwriter Defendants

are either U.S. entities or participated in the Offerings through U.S. subsidiaries or brokers.  Ex.

C at S-48; Ex. D at S-72.

<u>Second</u>, the <u>OPERS</u> and <u>Transamerica</u> Plaintiffs expressly alleged that they purchased

Petrobras Notes in the respective Offerings.  <u>See</u> <u>OPERS</u> Compl. ¶¶ 14-15 (OPERS "purchased

debt in the 2013 offering" and "in the 2014 offering"); <u>Transamerica</u> Compl. ¶ 406 ("Plaintiffs

purchased the 2013 Notes in the 2013 Offering and the 2014 Notes in the 2014 Offering . . .").

And while Danske did not expressly allege purchases in the Offerings, it filed transactional data

with its Complaint that establishes at least some purchases on the 2014 Offering date (<u>see</u>

<u>Skagen</u> Compl. App'x B (alleging Danske's purchases on offering date of March 10, 2014 at

offering price)), which is equivalent to alleging purchases in an offering.  <u>See</u> <u>In re BioScrip, Inc.</u>

<u>Sec. Litig.</u>, No. 13-CV-6922 AJN, 2015 WL 1501620, at *29 (S.D.N.Y. Mar. 31, 2015) (finding

the attachment of a schedule showing purchases on the offering date sufficient to allege

---

[8]     "No action has been or will be taken in any jurisdiction other than **the United States** by
PGF or any underwriter that would, or is intended to, permit a public offering of the notes, or
possession or distribution of this prospectus supplement or any other offering material, in any
country or jurisdiction where action for that purpose is required."  Ex. C at S-50; Ex. D at S-74.

purchases in the offering). The NY Funds also purchased Notes on the dates of the Offerings at the Offering prices, as demonstrated in their transaction data, and respectfully request leave to amend should the Court hold that this level of detail is required in order to plead a domestic transaction.[9]

Third, even Notes that were not purchased in the Offerings were purchased in domestic transactions because, according to the prospectuses, the Petrobras Notes "will be issued in book-entry form through the facilities of The Depository Trust Company, or 'DTC' . . . and will trade in DTC's Same-Day Funds Settlement System." Ex. C at S-12, Ex. D at S-15. The prospectuses also state that even secondary market trading "will be settled using procedures applicable to United States corporate debt obligations in DTC's Same-Day Funds Settlement System." Ex. C at S-38, Ex. D at S-62. The fact that all trading, including secondary trading, clears and settles through DTC, a U.S. entity,[10] further evidences that the Individual Plaintiffs' Note transactions were domestic transactions.

In sum, the Individual Plaintiffs adequately allege domestic transactions in the Petrobras Notes. Nevertheless, should the Court find any Individual Plaintiffs' allegations insufficient, each Individual Plaintiff requests leave to amend in order to plead additional facts supporting their allegations that their claims are based on domestic transactions.

---

[9] The NY Funds will provide their transaction data for in camera review at the Court's request.

[10] See Ex. D at S-63 ("DTC is . . . a limited purpose trust company organized under the laws of the State of New York").

**B.    The Individual Plaintiffs Have Standing Under Section 12(a)(2)**

Defendants argue that certain Individual Plaintiffs lack standing to bring claims under Section 12(a)(2) because they fail to allege they purchased Petrobras Notes "in a public offering of securities" rather than "in the secondary market."  Def. Br. at 11.

However, as Defendants acknowledge, and as noted above, the <u>OPERS</u> and <u>Transamerica</u> Complaints both expressly allege purchases in the 2013 and 2014 Offerings.  Def. Br. at 12-13; <u>OPERS</u> Compl. ¶¶ 14-15; <u>Transamerica</u> Compl. ¶ 406.  Danske's trading data also shows purchases in the 2014 Offering, and the NY Funds' trading data shows purchases in the 2013 Offering and the 2014 Offering.  <u>See</u> <u>Skagen</u> Compl. App'x B.[11]  To the extent that <u>some</u> of the Individual Plaintiffs' Note purchases were <u>not</u> in the Offerings, the Individual Plaintiffs concede that they cannot pursue 12(a)(2) claims based on those purchases, but this has no impact on their standing to pursue claims based on their purchases in the Offerings.  To the extent that any Individual Plaintiffs' allegations are found to be insufficient on this point, each is in possession of sufficient additional facts to replead Section 12(a)(2) standing, including the amount of Petrobras Notes purchased in each Offering as well as the purchase price, and respectfully requests leave to do so.

**C.    Plaintiffs Need Not Plead Reliance In Connection With Their Section 11 Claims**

Defendants argue that the <u>Transamerica</u> and <u>NY Funds</u> Plaintiffs' Section 11 claims regarding purchases of 2013 Petrobras Notes made after August 11, 2014 must be dismissed because Plaintiffs have not alleged reliance on the relevant registration statement in connection with those purchases.  Def. Br. at 14.  A court in this District rejected this exact argument,

---

[11]    As noted <u>supra</u> n.9, at the Court's request, the NY Funds Plaintiffs will produce the relevant transaction data for <u>in camera</u> review.

holding that "[j]ust as plaintiffs do not need to allege causation in order to plead a negligence claim (even though a plaintiff must ultimately prove causation to prevail) . . . plaintiffs do not need to allege reliance on a registration statement to plead a Section 11 claim," even where an earnings statement covering the period of twelve months after the registration statement has been issued. In re Initial Pub. Offering Sec. Litig., 241 F. Supp. 2d 281, 342 (S.D.N.Y. 2003). This is because the pleading standard for Section 11 claims is set by Rule 8, which requires only notice pleading. See id.[12]

The Transamerica and NY Funds Plaintiffs have alleged that they read and relied upon Defendants' SEC filings, including the 2012 Registration Statement,[13] thereby putting Defendants on notice that reliance on that document is at issue in this case even if the Section 11 claims do not specifically reference those allegations. Furthermore, many of the Transamerica and NY Funds Plaintiffs' 2013 Note purchases were made before August 11, 2014, such that Plaintiffs' Section 11 claims regarding those Notes will survive.[14]

III. **PLAINTIFFS ADEQUATELY PLEAD RELIANCE FOR THEIR SECTION 18 CLAIMS**

"In order to state a claim under Section 18, a plaintiff must plead actual, as opposed to presumed, reliance upon a false or misleading statement contained in any document or report

---

[12]      This Court dismissed certain of the Class Plaintiffs' Section 11 claims for failure to plead reliance. See In re Petrobras Sec. Litig, No. 14-cv-9662, 2015 WL 4557364, at *15 (S.D.N.Y. July 30, 2015). The Class Plaintiffs did not, however, raise this argument concerning In re IPO, and the Court's motion to dismiss opinion did not address the Class Plaintiffs' argument that Rule 8 sets the pleading standard for Section 11 claims. See Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Consolidated Amended Complaint, No. 1:14-cv-9662-JSR (ECF No. 160) at 43-47; 57-59.

[13]      Transamerica Compl. ¶¶ 275; 350; NY Funds Compl. ¶¶ 211; 284.

[14]      The Transamerica Plaintiffs made pre-August 11, 2014 purchases of the following 2013 Notes: 71647NAA7; 71647NAB5; and 71647NAF6. The NY Funds Plaintiffs made pre-August 11, 2014 purchases of the following 2013 Notes: 71647NAF6 and 71647NAA7.

filed with the SEC pursuant to the Exchange Act." Maverick Fund, L.D.C. v. Comverse Tech., Inc., 801 F. Supp. 2d 41, 51 (E.D.N.Y. 2011). Allegations that a plaintiff "read" and "relied" on the alleged misrepresentations in making stock purchases are sufficient at the motion to dismiss stage. Id. at 55; see also In re Marsh & McLennan Cos. Sec. Litig., 501 F. Supp. 2d 452, 493 (S.D.N.Y. 2006) ("Plaintiffs must allege that they personally read specific actionable misstatements in [] filings covered by Section 18, and then purchased or sold securities in reliance on those misstatements."). As Judge Gleeson explained in Maverick Fund:

> Maverick has adequately pled actual reliance . . . . Maverick alleges that it read and/or listened to and relied upon the defendants' false and misleading statements before investing tens of millions of dollars in Comverse shares. At this stage, I cannot say that plaintiffs' trading pattern makes it implausible that they read and relied upon defendants' misstatements when purchasing Comverse stock. **This alone is a sufficient allegation of actual reliance for purposes of surviving a motion to dismiss**.

801 F. Supp. 2d at 55.[15]

Rather than provide a complete picture of the Individual Plaintiffs' Section 18 reliance allegations, Defendants cherry-pick and rely on materially incomplete quotes from the Individual Complaints to challenge the sufficiency of these allegations. See Def. Br. at 17-18 (bullet points). A review of the Individual Plaintiffs' Section 18 allegations in their entirety shows that Plaintiffs adequately plead actual reliance with the requisite particularity.

**Aberdeen Emerging and Aberdeen Latin American.** The Aberdeen Emerging and Aberdeen Latin American Plaintiffs allege that their investment managers (specifically identified in the Complaints) engaged in "a detailed review" of Petrobras's SEC filings, including its "Forms 20-F" for 2012 and 2013. Aberdeen Emerging Compl. ¶¶ 454, 458 & App'x B;

---

[15]     See also In re Able Labs. Sec. Litig., No. CIV.A. 05-2681 (JAG), 2008 WL 1967509, at *26 (D.N.J. Mar. 24, 2008) (reliance adequately pled where "[p]laintiff alleges specific statements made on a specific form that was filed with the SEC" and "[p]laintiff pleads that the statements were read and relied upon in connection with the purchase of Able securities").

<u>Aberdeen Latin Am.</u> Compl. ¶¶ 454, 458.  These Plaintiffs allege specific reliance on Petrobras's "representations [in the Forms 20-F] concerning its **net income, total assets, and PP&E [property, plant equipment]**"—the very financial metrics that are alleged to have been falsified by Petrobras.  <u>Aberdeen Emerging</u> Compl. ¶¶ 459-461; <u>Aberdeen Latin Am.</u> Compl. ¶¶ 459-461.  These Plaintiffs further allege that "Petrobras's representations concerning [these metrics] had a material influence on, and were a substantial factor in bringing about," Plaintiffs' decisions to purchase Petrobras securities.  <u>Id.</u>  The <u>Aberdeen Emerging</u> and <u>Aberdeen Latin American</u> Plaintiffs also allege that they "relied upon Petrobras representations in these filing[s] that its <u>financial statements complied with IFRS and/or GAAP</u>, as well as the certifications issued by Petrobras executives in connection with the filings."  <u>Id.</u>  Additionally, these Plaintiffs allege that they reasonably relied "upon the materially false and misleading statements included in Petrobras's SEC filings" in purchasing "Petrobras common and preferred ADSs at artificially inflated prices, as set forth in Appendix A hereto."  <u>Id.</u> ¶ 462.  The referenced Appendix A contains the specific trade dates, amounts and prices for the transactions that the <u>Aberdeen Emerging</u> and <u>Aberdeen Latin American</u> Plaintiffs undertook in reliance upon Petrobras's misstatements.  <u>Id.</u> at App'x A.[16]

**Skagen.**  Skagen alleges that it relied upon "Petrobras's 2011 Form 20-F, 2012 Form 20-F and 2013 Form 20-F, including the Company's representations concerning its **net income,**

---

[16]     Defendants assert in a footnote that the <u>Aberdeen Emerging</u> Plaintiffs' allegations of continued reliance on the Forms 20-F following the publication of Forms 6-K containing interim financial results for the intervening periods are "implausible."  Def. Br. at n.19.  Defendants' contention is baseless.  It is entirely plausible that Plaintiffs continued to reasonably rely on the Forms 20-F as a source of <u>audited</u> information regarding Petrobras's performance in past fiscal periods notwithstanding the subsequent release of Forms 6-K with <u>unaudited</u>, interim figures.

**total assets and PP&E . . . .**" Skagen Compl. ¶ 458.[17]  Skagen further alleges that they "relied

upon the Company's representations in those [Form 20-F] filings that its financial statements

compliant with IFRS and/or GAAP, as well as the certifications issued by Petrobras executives in

connection with those filings." Id.  Skagen also alleges that representations "were a substantial

factor in . . . caus[ing] Skagen to purchase Petrobras common [stock] . . . following Petrobras's

issuance of the 2011 Form 20-F, the 2012 Form 20-F, and the 2013 Form 20-F," as set forth in

Appendix A. Id. ¶ 460.  The referenced Appendix A contains the specific trade dates, amounts

and prices for the transactions that Skagen undertook in reliance upon Petrobras's misstatements.

Id. at App'x A.

**Central States, WSIB and NN Investment.**  The WSIB, Central States and NN

Investment Plaintiffs allege that their outside investment managers reviewed and relied on

Petrobras's financial statements and other information contained in the Company's Forms 20-F.

WSIB Compl. ¶¶ 442-46; Central States Compl. ¶¶ 413-17; NN Investment Compl. ¶¶ 381-85.

Among other things, these Plaintiffs allege that their investment managers "relied upon the

financial statements included in Petrobras's 2010 Form 20-F, 2011 Form 20-F, and 2012 Form

20-F, including the Company's statements regarding its earnings, assets, liabilities, and PP[&]E,

---

[17]     Indeed, Skagen alleges that, as reflected on its website, its standard investment decision-
making process involves "'thoroughly analys[ing] balance sheets'" (id. ¶ 456) which would
show a company's assets and PP&E.  Cf. Gould v. Winstar, 692 F.3d 148, 161 (2d. Cir. 2012)
("Even assuming that such 'eyeball' reliance is the sort of actual reliance required by our
precedents, the District Court's conclusion"—that "plaintiffs failed to show reliance because
they could not demonstrate that they or their representatives 'actually saw Winstar's 1999 Form
10-K'"—"somewhat understates the record on this score . . . . Although [plaintiff] was unable to
specifically recall that she reviewed GT's audit opinion letter, there was evidence that she
actively reviewed such letters as a matter of practice in deciding whether to recommend certain
stocks.  At this stage of the proceedings, [this] testimony is enough; from that evidence, a jury
could reasonably infer that she actually reviewed and relied on the relevant statements in the
documents.  Accordingly, we conclude that the District Court erred in granting summary
judgment in [defendant's] favor on [plaintiffs'] Section 18 claims.").

among other statements." <u>WSIB</u> Compl. ¶ 444; <u>Central States</u> Compl. ¶ 415; <u>NN Investment</u> Compl. ¶ 383. Additionally, the <u>WSIB</u>, <u>Central States</u> and <u>NN Investment</u> Plaintiffs allege that their investment managers "relied upon the Company's representations in those filings that its financial statements complied with IFRS and/or U.S. GAAP, as well as the certifications issued by Petrobras executives in connection with those filings." <u>WSIB</u> Compl. ¶ 444; <u>Central States</u> Compl. ¶ 415; <u>NN Investment</u> Compl. ¶ 383.

**Transamerica and NY Funds.** The <u>Transamerica</u> Plaintiffs allege that in connection with their purchases of Petrobras ADS and Notes, they and/or their agents "actually read and relied upon the SEC filings of Petrobras, including the 2012 Form 20-F [and] the 2013 Form 20-F[.]" <u>Transamerica</u> Compl. ¶ 378. The <u>NY Funds</u> Plaintiffs similarly allege that they and/or their agents "actually read and relied upon" SEC filings including particular Forms 20-F. <u>NY Funds</u> Compl. ¶ 308. More specifically, in making their investments, the <u>Transamerica</u> and <u>NY Funds</u> Plaintiffs read and relied upon Defendants' representations and assurances regarding, <u>inter alia</u>, "Petrobras's balance sheet, earnings, and the value of its assets," and "the effectiveness of Petrobras's internal controls." <u>Transamerica</u> Compl. ¶ 350; <u>NY Funds</u> Compl. ¶ 284. "Plaintiffs and/or their agents received, reviewed, and relied upon Defendants' misrepresentations, described above, each of which had to do with these matters. Documents and SEC filings containing the representations outlined above (or nearly identical, materially similar counterparts thereto) were obtained, reviewed, and relied upon before any purchase was made." <u>Id.</u>

**OPERS.** OPERS alleges that it: "reviewed and relied upon the accuracy of Petrobras financial statements in the 2009 20-F, 2010 20-F, 2011 20-F, 2012 20-F and 2013 20-F." OPERS Compl. ¶ 360. Further, OPERS alleges that it "**relied upon the Company's representations regarding Petrobras' asset values and expenses**" and "relied upon the

Company's representation **that its financial statements complied with the IFRS and/or GAAP, as well as certifications that the Company had appropriate internal controls**." Id.

*     *     *

The Individual Plaintiffs' allegations discussed above are sufficient to state claims under Section 18. The cases Defendants cite in challenging the sufficiency of Plaintiffs' allegations are all inapposite. See Def. Br. at 15-17 (citing Int'l Fund Mgmt. S.A. v. Citigroup Inc., 822 F. Supp. 2d 368 (S.D.N.Y. 2011); In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig., 995 F. Supp. 2d 291 (S.D.N.Y. 2014); Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd., 33 F. Supp. 3d 401 (S.D.N.Y. 2014); Marsh & McLennan, 501 F. Supp. 2d 452, 493 (S.D.N.Y. 2006)).

First, the plaintiffs in Citigroup, Bear Stearns and Special Situations Fund all failed to identify the specific representations upon which they claimed to have relied. See Citigroup, 822 F. Supp. 2d at 386 (plaintiffs' allegations are "conclusory" and "incredibly broad" because they "alleg[e] reliance on entire 10-Ks for indefinite periods of time"); Bear Stearns, 995 F. Supp. 2d at 309 ("SRM does not link its review of any particular statements in [Bear Stearns' Form 10-K] or any other document to any actual purchases of Bear Stearns securities."); Special Situations Fund, 33 F. Supp. 3d at 444 ("Plaintiffs' Section 18 allegations, as drafted, do not include allegations premised on the alleged falsity of, or reliance upon, DTTC's audit opinions"—"the only statements that DTTC 'made or caused to be made'"). Here, the Aberdeen Emerging, Aberdeen Latin American, Skagen, Transamerica, OPERS and NY Funds Plaintiffs allege specific reliance on the net income, total assets and PP&E figures, the GAAP compliance

statements and the Sarbanes-Oxley certifications included in Petrobras's 20-F reports—all of which are alleged to be false.[18]

Second, in <u>Citigroup</u> and <u>Bear Stearns</u>, the plaintiffs failed to plead with any specificity the date[s] or amount[s] of their purchases allegedly made in reliance upon the challenged statements. See <u>Citigroup</u>, 822 F. Supp. 2d at 386 (allegations insufficient because reliance pled for "<u>indefinite periods of time</u>"); <u>Bear Stearns</u>, 995 F. Supp. 2d at 309 (allegations insufficient because plaintiff "<u>does not identify a particular transaction that it allegedly made in reliance</u> on the document or any other document"). The failure of the <u>Citigroup</u> and <u>Bear Stearns</u> plaintiffs to identify the specific purchases undertaken in reliance on the allegedly false statements contrasts starkly with the Individual Complaints which attach detailed schedules of the Plaintiffs' purchases.[19] These "listing[s] of purchases . . . convey[] the necessary amount of detail to satisfy Rule 9(b)." <u>In re BP p.l.c. Sec. Litig.</u>, Nos. MDL No. 10-md-2185, 4:12-CV-1256, 2013 WL 6383968, at *41 (S.D. Tex. Dec. 5, 2013).[20, 21]

---

[18]    See <u>Aberdeen Emerging</u> Compl. ¶ 459 <u>Aberdeen Latin Am.</u> Compl. ¶ 459; <u>Skagen</u> Compl. ¶ 458; <u>NY Funds</u> Compl. ¶¶ 284, 124-25, 140-41, 154-55, 176-77, 200-01; <u>Transamerica</u> Compl. ¶¶ 350, 169-70, 190-91, 204-05, 230-31, 256-57; <u>OPERS</u> Compl. ¶¶ 359-360, 449-504.

[19]    See <u>Aberdeen Emerging</u> Compl. ¶ 462 & App'x A; <u>Aberdeen Latin Am.</u> Compl. ¶ 462 & App'x A; <u>Skagen</u> Compl. ¶ 460 & App'x A. The <u>Transamerica</u>, <u>NY Funds</u> and <u>OPERS</u> Plaintiffs did not attach schedules of their purchases to their respective Complaints. Should the Court hold that this level of detail is required in order to plead Section 18 reliance, they respectfully request leave to amend. See <u>In re Petrobras</u>, 2015 WL 4557364, at *15 (granting the Class Plaintiffs leave to amend to include additional detail regarding the circumstances of their transactions).

[20]    In <u>BP</u>, Judge Ellison upheld actual reliance allegations in connection with common law fraud claims, applying reasoning that is applicable here:

> The Court finds that Plaintiffs' listing of purchases of BP's Ordinary Shares [] conveys the necessary amount of detail to satisfy Rule 9(b) . . . . To the extent that Defendants fault Plaintiffs for not citing specific public statements that motivated each and every purchase of Ordinary Shares, the Court disagrees that Rule 9(b) mandates this level of specificity. Pursuant to Rule 9(b), Plaintiffs have

Third, Defendants' reliance on <u>Marsh & McLennan</u> is misplaced because there the court dismissed the Section 18 claims <u>solely</u> because it had already found that the alleged false statements "were not misleading" and thus were inactionable. 501 F. Supp. 2d at 493. Here, the Court has already upheld substantially similar allegations in the Class Action that Petrobras's Forms 20-F between 2011 and 2014 were materially false and misleading. <u>See</u> MTD Opinion at 18-26.

For all of these reasons, the Individual Plaintiffs' Section 18 claims are adequately pled.

**IV.  MOST OF THE INDIVIDUAL PLAINTIFFS' NON-FEDERAL CLAIMS ARE NOT PRECLUDED BY SLUSA**

As a preliminary m atter, Defendants tacitl y concede that the comm on law fraud and foreign claims brought by the <u>WSIB</u> Plaintiff are outside the reach of SLUSA. <u>See, e.g.</u>, Def. Br.

---

catalogued in detail the statements they contend were materially misleading. Their allegations of falsity and scienter have been tested, both in this case and in the Class Action . . . . Given the general coherence of Plaintiffs' allegations regarding Defendants' allegedly fraudulent 'scheme,' the Court does not believe that identifying which <u>specific</u> misrepresentations motivated each purchase would be a productive exercise for either side.

<u>Id.</u> at *41 (emphasis in original).

[21]  Even so, where, as here, "plaintiffs provide ample details concerning which statements are alleged to be fraudulent and why" and further allege that they purchased the relevant stock "<u>over the entire period of the alleged fraud</u>, . . . plaintiffs are <u>not required to plead the specific details of each purchase and sale of Comverse stock during the relevant period</u>." <u>Maverick Fund</u>, 801 F. Supp. 2d at 53-54. <u>See Aberdeen Emerging</u> Compl. ¶¶ 295-388, App'x A (alleging misrepresentations and purchases in reliance thereon between 2010-14); <u>Aberdeen Latin Am.</u> Compl. ¶¶ 295-388, App'x A (same); <u>Skagen</u> Compl. ¶¶ 299-392, App'x A (same); <u>OPERS</u> Compl. ¶¶ 14, 15, 18, 214, 215-303, 358(f), 359-60, 373, 410, 412, 415; <u>WSIB</u> Compl. ¶¶ 71, 204-374; <u>Central States</u> Compl. ¶¶ 42, 175-345; <u>NN Investment</u> Compl. ¶¶ 47, 143-313; <u>NY Funds</u> Compl. ¶¶ 121-210; <u>Transamerica</u> Compl. ¶¶ 169-274. As the <u>Maverick Fund</u> court explained, "[t]he specifics of when plaintiffs made trades and at what prices those trades were made, while relevant to the issue of damages, is not a matter of concern at this stage." 801 F. Supp. 2d at 54.

at 21 ("while SLUSA e xempts certain govern ment entities from its ambit . . .").[22]  For good

reason.  WSIB is a pension plan established and maintained for its employees by the Washington

State government.  See ECF No. 1, ¶ 17.  And, SLUSA provides "not hing in this section may be

construed to preclude a State or  political subdivision thereof or a State p ension plan fro m

bringing an action involving a cove red security on its own behalf . . . ."  15 U.S.C. § 77p(d)(2).

Accordingly, SLUSA does not reach Counts IV through X of the WSIB Complaint.

The Court should reject Defendants' argument that the Central States and NN Investment

Plaintiffs' claims based on Brazilian law are precluded by SLUSA.  See Def. Br. at 21-22, n.27.[23]

Defendants acknowledge other courts have held  that SLUSA does not pre-em pt foreign-law

claims.  Indeed, the Third Circuit has done so a nd persuasively explained why the d efinition of

"State" in SLUSA does not im plicate foreign law claims.[24]  See LaSala v. Bordeir et Cie, 519

F.3d 121, 138 (3d Cir. 2008) (obser ving "the difficulty with divi ning congressional intent to

preempt foreign-law claims is that Congress specifically described the claims preempted as those

'based on the law of an y State.'  SLUSA constitutes an amendment of [the 1934 Act]," which

defines "'state' throughout the Ac t as 'any State of the United St ates, the District of Columbia,

Puerto Rico, the Virgin Islands, or any other posse ssion of the United States.'").  See also In re

BP p.l.c. Sec. Litig., MDL No. 10- md-2185 slip op. at 19 (S.D. Tex. Sept. 30, 2014) (ECF No.

---

[22]     Central States and NN Investment do not dispute that SLUSA most likely pre-empts the
state common law claims based on fraud (i.e., Central States Count IV; NN Investment Counts
IV and V).

[23]     As noted supra n.1, the Individual Plaintiffs are no longer seeking to assert Brazilian law
claims in light of the MTD Opinion compelling the arbitration of such claims.  The SLUSA
arguments asserted herein with respect to the Brazilian law claims are intended only to preserve
these arguments for appeal.

[24]     The Second Circuit has not yet directly addressed whether SLUSA preempts foreign-law
claims.

1022) (holding that the plain language of "S LUSA simply does not—on its face—preclude foreign law claims").

The definitional structure of the Exchange Ac t, moreover, does not support Defendants' contention that SLUSA preem pts foreign law clai ms. See Def. Br. at 22, n.27. As the Third Circuit made clear in L aSala, "[g]iven that Congress made the explicit policy choice in the [Exchange] Act of defining 'state' so as not to include foreign countries, and, in SLUSA, chose not to alter the definition while defining othe r terms . . . when Congress extended SLUSA preemption to claims 'based upon the law of any St ate,' it meant just that." LaSala, 519 F.3d at 139. The Court should follow the persuasive re asoning of the Third Circuit and reject Defendants' argument.

## V.     THE INDIVIDUAL PLAINTIFFS ADEQUATELY ALLEGE THEIR SECTION 12(a)(2) CLAIMS

### A.     The Underwriter Defendants Were Statutory Sellers

Under Section 12(a)(2), "statutory sellers" include both those who have "passed title, or other interest in the security, to the buyer for value," and those who "successfully solicit[ed] the purchase" in an offering. In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 359 (2d Cir. 2010) (quoting Pinter v. Dahl, 486 US 622, at 642, 647 (1988)); see also Def. Br. at 22, citing id.

As explained more fully above, the NY Funds, Transamerica, OPERS and WSIB Plaintiffs adequately allege that they purchased Petrobras Notes in the Offerings. See supra § II.B. Therefore, the Underwriter Defendants passed title to these Plaintiffs. As one federal court observed:

> [C]ourts have held that, in a 'firm commitment offering' in which the underwriters purchase shares from the issuing company and then sell them to the public, the underwriters are statutory sellers. In a firm commitment offering, "[a] direct sale to public investors makes an underwriter a 'seller' within the meaning of Section 12(a)(2)."

Northumberland Cnty. Ret. Sys. v. Kenworthy, No. CIV-11-520-D, 2013 WL 5230000, at *8 (W.D. Okla. Sept. 16, 2013), (citing In re Am. Bank Note Holographics, Inc. Sec. Litig., 93 F.Supp.2d 424, 439 (S.D.N.Y. 2000)).  Here, as in Kenworthy, it is not in dispute that the Offerings were "firm commitment offerings."  Id.; see also Def. Br. at 3, 24.  Thus the Individual Plaintiffs adequately allege that the Underwriter Defendants were statutory sellers under Section12(a)(2).

Moreover, the cases cited here by Defendants are inapposite.  Defendants cite In re Merrill Lynch & Co. Research Reports Sec. Litig., 272 F. Supp. 2d 243, 255 (S.D.N.Y. 2003) for the proposition that OPERS must identify "the specific Underwriter Defendants with whom it transacted."  Def. Br. at 23.[25]  But Merrill Lynch Research Reports does not even pertain to underwriters; rather, it concerns purchases of shares in a mutual fund, and the plaintiff there failed to allege any facts showing that she purchased the shares directly from any defendant.  272 F. Supp. 2d at 255 ("Plaintiff does not allege that she purchased Global Technology Fund shares from a Merrill Lynch broker or that the Fund was sold exclusively through Merrill Lynch brokers.").  In fact, courts in this District have made clear that they generally will not require a plaintiff to "identify the specific underwriter from which it purchased [securities] . . . ."  Perry v. Duoyuan Printing, Inc., No. 10 Civ. 7235 (GBD), 2013 WL 4505199, at *12 (S.D.N.Y. Aug. 22, 2013) (collecting cases).

In DeMaria v. Andersen, only one of a group of plaintiffs alleged any purchases in the offering at issue, and the seller to that plaintiff was not named as a defendant.  153 F. Supp. 2d 300, 307 (S.D.N.Y. 2001) aff'd, 318 F.3d 170 (2d Cir. 2003).

---

[25]     As noted above, OPERS does so by naming only the specific underwriters with which it transacted as Defendants.

Finally, in <u>Shain v. Duff & Phelps Credit Rating Co.</u>, 915 F. Supp. 575 (S.D.N.Y 1996) (cited at Def. Br. at 24, n. 29), the court found that a <u>credit rating service</u> did not "solicit" purchases for purposes of Section 12(a)(2). In fact, the credit rating service was not even alleged to have solicited the plaintiff, but only the brokers who sold to the plaintiff. <u>Id.</u> at 581.[26]

The challenged Individual Plaintiffs are all nonetheless prepared to plead additional allegations, if necessary, as to their purchases from the Underwriter Defendants. OPERS can plead the amount of Petrobras Notes it purchased from each respective Underwriter Defendant, as well as the dates of those purchases (which correspond to the Offering dates). The <u>Transamerica</u> and <u>NY Funds</u> Plaintiffs are similarly prepared to plead this information, if required.

**B.     The Petrobras Defendants Were Statutory Sellers**

Defendants also argue that certain of the Individual Plaintiffs fail to allege that Petrobras was a "statutory seller" for purposes of their Section 12(a)(2) claims, because "neither Petrobras nor PGF actually sold any Petrobras Notes to any plaintiff . . . ." Def. Br. at 24.

Defendants previously raised a substantially identical argument in the Class Action. <u>Compare</u> Def. Br. at 22-25 <u>with</u> Class MTD at 39-40 and Class MTD Br. at 16-17. This Court unequivocally rejected that argument. <u>See</u> <u>MTD Opinion</u> at 32, n.6 (finding that apart from the plaintiffs' failure to plead purchases in the offerings, all of Defendants' other 12(a)(2) standing arguments—including the statutory seller argument raised here—are "without merit"); <u>see also</u> Class MTD Opp. at 54-56 (citing SEC Rule 159A and numerous cases, all of which make clear than an issuer is a statutory seller for 12(a)(2) purposes in an offering).

---

[26]     Only <u>UBS AG Sec. Litig.</u>, No. 07 Civ. 11225 (RJS), 2012 WL 4471265 (S.D.N.Y. 2012), even appears relevant, and that case has been recently recognized as an outlier, and is disagreed with by numerous other cases. <u>See</u> <u>In re BioScrip</u>, 2015 WL 1501620, at *29.

Further, even in one of the cases relied on by Defendants in their motion, another court in this District found allegations that "issuer defendants, acting in their own financial interest with respect to the solicitation of sales, prepared and signed the Registration Statement and Prospectus" used in an offering sufficient for a claim under 12(a)(2). Griffin v. PaineWebber, Inc., No. 99 CIV. 2292 (VM), 2001 WL 740764, at *3 (S.D.N.Y. June 29, 2001) (citing Degulis v. LXR Biotechnology, Inc., 928 F. Supp. 1301, 1315 (S.D.N.Y. 1996) (cited in Def. Br. at 24)). A prospectus is, by definition, a document soliciting investors to acquire securities in an offering. Griffin, 2001 WL 740764, at *3 (citing Gustafson v. Alloyd Co., Inc., 513, U.S. 561, 574 (1995)).

## VI.  WSIB ADEQUATELY ALLEGES A NEGLIGENT MISREPRESENTATION CLAIM

Defendants, by their silence, concede that WSIB has stated a claim for common law negligent misrepresentation pursuant to Washington State common law.  Defendants, however, contend that the "choice-of-law" doctrine requires WSIB to plead a negligent misrepresentation claim under New York State common law, which requires a plaintiff to allege a duty arising out of a special relationship.  See Def. Br. at 25-29.  WSIB does not dispute that if New York law governs its negligent misrepresentation claim, it has not alleged a special relationship.  However, the Court should reject Defendants' argument that New York law governs WSIB's negligent misrepresentation claim.

When parties disagree about what law governs a claim, New York utilizes an "interest analysis" and applies the "law of the jurisdiction with the most significant interest in, or relationship to, the dispute."  In re Refco Inc. Sec. Litig., 892 F. Supp. 2d 534, 537 (S.D.N.Y. 2012) (Rakoff, J.) (quoting White Plains Coat & Apron Co., Inc. v. Cintas Corp., 460 F.3d 281, 284 (2d Cir. 2006)).  "For tort actions, the jurisdiction with the greatest interest is generally the

jurisdiction in which the loss occurred—or where the plaintiff is located." Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP, 612 F. Supp. 2d 267, 283-84 (S.D.N.Y. 2009).[27] "In weighing the interests in a tort case, New York distinguishes between 'conduct regulating' and 'loss allocating' rules." In re Refco, 892 F. Supp. 2d at 283-84 (quoting Lee v. Bankers Trust Co., 166 F.3d 540, 543 (2d Cir. 1998)). When the conflict involves rules that regulate conduct, such as negligent misrepresentation, "the site of the tort governs." In re Refco, 892 F. Supp. 2d at 537.

Under New York choice of law rules, Washington State law should apply to WSIB's claims for negligent misrepresentation. WSIB operates and is located in Washington and the statements at issue reached WSIB in Washington. Even though Petrobras is a Brazilian company, "when the defendant's [tortious] conduct occurs in one jurisdiction and the plaintiff's injuries are suffered in another, the place of the wrong . . . is determined by where the plaintiffs' injuries occurred." La Luna Enters. v. CBS Corp., 74 F. Supp. 2d 384, 388 (S.D.N.Y. 1999). WSIB suffered injury—i.e., economic losses—from Defendants' wrongdoing in Washington so Washington law should apply. Intellivision v. Microsoft Corp., No. 07 CIV. 4079 (JGK), 2008 WL 38843826, at *6 (S.D.N.Y. Aug. 20, 2008) (holding that Connecticut law applies to negligent misrepresentation and fraud claims because plaintiff's principal place of business is Connecticut); Sack v. Low, 478 F.2d 360, 366 (2d Cir. 1973) ("[W]hen a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made." (quoting First Restatement of Conflicts, § 377, note 4)).

Defendants are mistaken that WSIB's allegations demonstrating New York as a proper venue require the application of New York law. Regardless of where Petrobras's ADSs traded or

---

[27] Defendants incorrectly argue that courts do not focus on "where the plaintiff incurred loss." Def. Br. at 25.

the fact that Petrobras debt securities may have been marketed in New York, the wrong against WSIB occurred in Washington.  AHW Inv. P'ship v. CitiGroup Inc., 980 F. Supp. 2d 510, 523-24 (S.D.N.Y. 2013), is clearly distinguishable.  The Court in AHW held that New York law applies because the defendant was located in New York and the defendants' allegedly deceptive acts took place there.  Id. at 523-24.  Here, however, Petrobras is a Brazilian company and the kickback scheme at the center of Defendants' wrongdoing originated not in New York, but in Brazil.  Simply because Defendants' fraud was far-reaching and impacted investors throughout the United States is not a reason to limit the remedies of those harmed.

WSIB's negligent misrepresentation claim against the Underwriter Defendants should not be dismissed.  Contrary to Defendants' argument, the WSIB Complaint clearly alleges that the Underwriter Defendants caused certain statements in the Petrobras Notes Offering documents to be made—i.e., each Underwriter Defendant "made" and "helped disseminate" the false and misleading registration statements.  See WSIB Compl. ¶¶ 50-62, 473.  Further, the WSIB Complaint alleges that each Underwriter Defendant failed to conduct reasonable due diligence to ensure that the offering documents, before the Underwriter Defendants disseminated them, did not contain a material misstatement or omission.  Id. ¶¶  479-480.[28]

---

[28]    Defendants' interpretation of Colonial Imps. v. Carlton N.W., Inc., 121 Wash. 2d 726, 732 (Wash. 1993), is an overreach because that case and controlling precedent holds otherwise. Indeed, the Washington State Supreme Court in Colonial Imps. stated, "**we have never attempted to limit negligent misrepresentation strictly to the fiduciary context**."  Id. at 732. Further, as the court made clear decades prior to its Colonial Imps. decision that "[i]t will thus be seen that the duty to speak does sometimes arise when the parties are dealing at arm's length. That duty arises where the facts are peculiarly within the knowledge of one person and could not be readily obtained by the other . . . ."  Oates v. Taylor, 31 Wn.2d 898, 904 (Wash. 1948). Accordingly, Washington's negligent misrepresentation cause of action is applicable in this case. Defendants' "actual reliance" argument is misplaced as well because it ignores detailed allegations of direct reliance in the WSIB complaint.  See ECF No. 1, ¶¶ 442-446.

**VII.    THE INDIVIDUAL PLAINTIFFS HAVE ADEQUATELY ALLEGED THAT HELMS WAS A CONTROL PERSON UNDER SECTION 15**

Defendants argue that the Individual Plaintiffs' claims against Mr. Helms under Section 15 of the Securities Act should be dismissed, because Mr. Helms purportedly is not a control person of Petrobras.  See Def. Br. at 31-32.  Defendants are wrong.  Mr. Helms signed the prospectus included in Petrobras's 2012 Registration Statement in his role as the Company's authorized U.S. representative,[29] thereby authorizing the relevant bond offerings to proceed, and "[d]irectors and officers who sign registration statements or other SEC filings are presumed to control those who draft those documents."  City of Westland Police and Fire Ret. Sys. v. MetLife, Inc., 928 F. Supp. 2d 705, 721 (S.D.N.Y. 2013).  Thus, courts have held that allegations that a corporate officer signed a registration statement are sufficient to plead that officer's control over the relevant transactions and state a Section 15 claim.  See, e.g., Emps.' Ret. Sys. of the Gov't of the Virgin Islands v. J.P. Morgan Chase & Co., 804 F. Supp. 2d 141, 157 (S.D.N.Y. May 10, 2011) ("The plaintiff has alleged not only that the Individual Directors were officers or directors of JPM Acceptance, but also that they directly participated in the alleged primary violation: their signatures enabled JPM Acceptance's participation in the allegedly unlawful conduct. This is sufficient to sustain a control person claim at the motion to dismiss stage.").[30]

---

[29]      NY Funds Compl. ¶ 62; OPERS Compl. ¶ 430; Transamerica Compl. ¶ 69; WSIB Compl. ¶ 42.

[30]      See also, e.g., In re BioScrip, 2015 WL 1501620, at *30 ("Because each one of the Individual Securities Act Defendants signed the Shelf Registration Statement responsible for the April 2013 and August 2013 offerings . . . Plaintiffs have adequately alleged that they possessed actual control over BioScrip.");  In re Bear Stearns Mortg. Pass-Through Cert. Litig., 851 F. Supp. 2d 746, 773 (S.D.N.Y. 2012) (allegations that defendants were officers and directors who signed the registration statements at issue "satisfy Plaintiffs' obligation to plead control."); Plumbers' & Pipefitters' Local No. 562 v. J.P. Morgan Acceptance Corp. I, No. 08-cv-1713-ERK, 2012 WL 601448, at *20 (E.D.N.Y. Feb. 23, 2012) ("It is well settled law that officers and directors of the primary violator who signed the registration statements containing alleged violations fulfill the control prong."); In re WorldCom, Inc. Sec. Litig., 294 F. Supp. 2d 392,

This Court has previously held that a plaintiff bringing a Section 15 claim must allege "meaningful culpable conduct . . . beyond mere status as a director or officer" in order to allege control, see Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc., 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010) (quoting P. Stolz Family P'ship, L.P. v. Daum, 166 F. Supp. 2d 871, 873 (S.D.N.Y. 2001)).[31]  That requirement is met here because Plaintiffs do allege culpable conduct beyond Mr. Helms' status as an officer of Petrobras—namely, that he authorized Petrobras's 2012 Registration Statement and the resulting bond offerings.  Courts have held that allegations that a particular officer or director signed a corporate document alleged to contain material misrepresentations are sufficient to establish "culpable participation."  See In re Worldcom, 294 F. Supp. 2d at 414-15; 419-20 (holding that directors' signatures on SEC filings were sufficient to plead control and culpable participation under Section 20(a)).  "[T]he 'culpable participation' cases should not impose the scienter requirement from Section 20 or otherwise impose any conduct or state of mind standard that is more stringent than the standards of Section 11 itself." Emps.' Ret. Sys. of the Gov't of the Virgin Islands, 804 F. Supp. 2d at 158 n.6 (holding that allegations that corporate officers enabled allegedly unlawful conduct by signing offering documents would satisfy 'culpable participation' requirement).[32]

---

419 (S.D.N.Y. 2003) ("Where it is alleged that a defendant signed an SEC filing that contained the misrepresentations that are the subject of the Section 10(b) claim, this is sufficient to allege control of the authors of the filing, and the management and policies of the corporation behind the misrepresentations.") (assessing control allegations under Section 20(a) of the Exchange Act).

[31]    The Second Circuit has yet to address the question of whether a plaintiff bringing a Section 15 claim must allege 'culpable participation,' but "a majority of judges in this District . . . have held such an allegation is not required."  In re Bear Stearns, 851 F. Supp. 2d at 773 (collecting cases).

[32]    While the individual defendants in the Merrill Lynch case were alleged to have signed registration statements, the Court did not discuss whether this conduct was sufficient to constitute 'culpable participation.'  See Pub. Emps.' Ret. Sys. of Miss., 714 F. Supp. 2d at 485.

## CONCLUSION

For the foregoing reasons, the Individual Plaintiffs respectfully request that Defendants' Motion to Dismiss the Individual Action Complaints be denied in its entirety.


Dated:   September 18, 2015

**KESSLER TOPAZ MELTZER & CHECK, LLP**

*/s/ Matthew L. Mustokoff*
Darren Check
Gregory Castaldo
Matthew L. Mustokoff
Richard A. Russo
Margaret Onasch
280 King of Prussia Road
Radnor, PA 19087
Phone:  610-667-7706
Fax:  610-667-7056
dcheck@ktmc.com
gcastaldo@ktmc.com
mmustokoff@ktmc.com
rrusso@ktmc.com

***Counsel for Plaintiffs in the Aberdeen Latin America Income Fund et al., Case No. 15-cv-04030 (JSR); Aberdeen Emerging Markets Fund et al., Case No. 15-cv-03860 (JSR); Dimensional Emerging Markets Value Fund et. al., Case No. 15-cv-02165 (JSR); and Skagen AS et al., Case No. 15-cv-02214 (JSR)***


**STRADLEY RONON STEVENS & YOUNG, LLP**
Joseph T. Kelleher
Marissa R. Parker
2005 Market Street, Suite 2600
Philadelphia, PA  19103
Phone:  215-564-8000
Fax:  215-564-8120
jkelleher@stradley.com
mparker@stradley.com

Keith R. Dutill
Great Valley Corp. Center
30 Valley Stream Parkway
Malvern, PA 19355
Phone: 610-640-5809
kdutill@stradley.com

***Counsel for Plaintiffs in Aberdeen Latin
America Income Fund et al., Case No. 15-
cv-04030 (JSR); Aberdeen Emerging
Markets Fund et al., Case No. 15-cv-03860
(JSR); Dimensional Emerging Markets
Value Fund et. al., Case No. 15-cv-02165
(JSR)***


**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox
Donald R. Hall
Hae Sung Nam
Melinda D. Campbell
Matthew P. McCahill
Pamela A. Mayer
850 Third Avenue, 14th Floor
New York, NY 10022
Phone: 212-687-1980
Fax: 212-687-7714
ffox@kaplanfox.com
dhall@kaplanfox.com
hnam@kaplanfox.com
pmayer@kaplanfox.com

***Counsel for Plaintiff in Ohio Public
Employees Retirement System,
Case No. 15-cv-03887 (JSR)***


**KAHN SWICK & FOTI LLC**
Kim E. Miller
Bruce Dona
250 Park Ave., Suite 2040
New York, NY 10177
Phone: 504-455-1400
Fax: 504-455-1498
kim.miller@ksfcounsel.com
bruce.dona@ksfcounsel.com

Lewis S. Kahn
Michael Swick
206 Covington Street
Madisonville, LA 70447
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com
michael.swick@ksfcounsel.com

***Counsel for Plaintiff in Aura Capital Ltd.,
Case No. 15-cv-04951 (JSR)***


**GRANT & EISENHOFER, P.A.**
Jay W. Eisenhofer
Deborah A. Elman
Geoffrey C. Jarvis
David M. Haendler *(pro hac vice)*
Robert D. Gerson
485 Lexington Avenue
New York, NY 10017
Phone:  646-722-8500
Fax:  646-722-8501
jeisenhofer@gelaw.com
delman@gelaw.com
gjarvis@gelaw.com
dhaendler@gelaw.com
rgerson@gelaw.com

***Counsel for Plaintiffs in Transamerica
Income Shares, Inc. et al., Case No. 15-cv-
03733 (JSR); New York City Employees
Retirement System et al., Case No. 14-cv-
09662***


**DIAZ REUS ROLFF & TARG LLP**
Alexander Reus
340 West Flagler Street., Second Floor
Miami, FL 33130
Tel: (786) 235-5000
areus@diazreus.com

***Of Counsel for Plaintiffs in Transamerica
Income Shares, Inc. et al., Case No. 15-cv-
03733 (JSR)***

**ROBBINS GELLER RUDMAN
& DOWD LLP**
Samuel H. Rudman
Evan J. Kaufman
58 South Service Road, Suite 200
Melville, NY 11747
Phone: 631-367-7100
Fax: 631-367-1173
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com

David C Walton
Darren J. Robbins
Trig R. Smith
Cody R. LeJeune
Carissa J. Dolan
655 West Broadway, Suite 1900
San Diego, CA 92101
Phone: 619-231-1058
Fax: 619-231-7423
davew@rgrdlaw.com
trigs@rgrdlaw.com
clejeune@rgrdlaw.com
cdolan@rgrdlaw.com

*Counsel for Plaintiffs in NM Investment
Partners et al., Case No. 15-cv-04226 (JSR);
Central States Southeast and Southwest
Areas Pension Fund, Case No. 15-cv-03911
(JSR); and Washington State Investment
Board, Case No. 15-cv-03923 (JSR)*